To our next case, U.S. v. Rigas. Mr. McMahon? Yes. Good morning, and may it please the Court, I am Lawrence McMichael. I represent the appellants John and Timothy Rigas. I would respectfully request three minutes for rebuttal. That's granted. This appeal arises from a tactical decision by the government to try the Rigas' twice for the same conduct as the officers and directors of Delphi Communications Corporation. This tactical decision gives rise to two serious issues. First is a double jeopardy problem of the government's own making with respect to the conspiracy count here. And second, because the first trial resulted in an acquittal on the key wire fraud counts, This appeal also gives rise to equally serious collateral estoppel issues with respect to the government's tax fraud claims. I'll address both double jeopardy and collateral estoppel. The Southern District of New York prosecution against the Rigas' commenced in 2002. It was a very wide-ranging prosecution. The government accused the Rigas' of a single count of conspiracy. It was a very broad conspiracy, challenging virtually everything they did. To commit an offense against the United States, mail fraud, buying fraud, etc. And to defraud the United States. And to defraud the United States, both. Because the SEC was a specific named victim of the conspiracy, the fraud conspiracy in the Southern District of New York. The allegations in that case, as I was about to say, challenged virtually every transaction that the Rigas' had conducted while they ran Adelphia Communications Corporation. The basic theory that the government proffered in New York was that the Rigas' ran Adelphia for their own personal benefit and the benefit of their family. And to the detriment of the public shareholders and the public debt holders of Adelphia. The overt acts consisted largely of lending transactions between the Rigas' and Adelphia, and the Rigas' and the banks, which are laid out in detail in both indictments. Both the indictment here and the indictment in the Southern District of New York. The way the case was tried in New York, the government contended that all of these transactions resulted basically in the Rigas' stealing money from Adelphia in every possible way. And that was the core of the wire fraud claim in New York. Stealing money from Adelphia was the thrust. A conspiracy to steal money from Adelphia. From Adelphia was the core of the wire fraud claim. Now, the same conspiracy involved a variety of other things, including a conspiracy to hide information from the public, not making adequate disclosures, to falsify certain documents, compliance certificates that were sent to the bank. We're going to be using up all your time here. Let's talk about the second indictment had to do with defrauding the United States of tax dollars, right? On their face, these smell very different. And I can't get over the fact. They smell very different. The case law may help or may not help here. This is an unusual case. We have arguably one stat, or you would argue, I assume, that we have a Braverman situation because there's a violation of one statute. Yes, ma'am. Correct? Yes. And I assume you would say that under Albernaz, the distinction that was drawn there was that Braverman involved a single statute, whereas in Albernaz, it violated two statutes. Exactly. But still, it's different because the statute here has two different offenses. It's to commit an offense against the United States and to defraud the United States. And most of the circuits who have already addressed this issue, or Smith is to the contrary in a duplicity context, say there are two different types of conspiracy and two different offenses within this specific statute, and therefore, there's no double jeopardy. If we were to be convinced by those courts that these are two different statutes, how do you then succeed on double jeopardy? Well, first of all, Your Honor, I think your premise is incorrect. By our count, the split in the circuits is six to one in our favor on the question of whether Section 371 creates one or two offenses. Most of the courts who have addressed this issue actually have held, albeit in a duplicity context, they have held that Section 371 creates a single offense with alternate means for commission. But we have Thompson and Ervasti at least, 10th and 8th. No, Thompson, there's a subsequent 10th Circuit. Thompson doesn't quite get there. There's a subsequent 10th Circuit case which is cited in our briefs after Thompson that holds that 371 is a single offense. Just a quick question. Ervasti is the standalone case. That's the 8th Circuit case. You could never have two offenses under 371? You could have two separate offenses. The two separate conspiracies, you could do that. That's the point here on double jeopardy is the government's got to show one of two things. And by the way, just I know the court's aware of this. It's the government's burden to demonstrate this, not ours. In a double jeopardy context, the burden is on them. They have to show either that there were two separate agreements. In other words, two independent conspiracies that separately violated a single statute. Then they can be punished twice. They can be tried twice and punished twice. They've got to show either that or they have to show, as Judge Rendell was just articulating a minute ago, that this single one-sentence statute actually creates two crimes. Now, there are several reasons. Let me address the latter first because that's the issue you're focusing on, Judge. There are three reasons why this statute doesn't create two separate crimes. The first is, as I just discussed, the weight of the circuits is in our favor on that by a count of six to one, or Vasty being the standout circuit. Secondly, this statute was enacted after Braverman. Remember what Braverman said. Braverman said it's the agreement that's the crime, not the objectives, not the consequences, not whether, you know, one agreement was to file false statements to the SEC and the agreement also was to file false tax returns. If it's one agreement, it's one crime. This statute was enacted after that. Congress is presumed to understand what the Supreme Court law was at the time it enacted Section 371. And the third reason is the common principle of lenity. I don't know how far that gets you. Well, I won't argue with that. But the third principle is the principle of lenity, which is a simple statutory construction principle that you construe a criminal statute narrowly and not broadly. So the point is you do have to analyze the conduct here to determine whether there are two separate conspiracies. You do. Is that right? You do. Well, unless, if that's the alternate means, you have to do that. And in that situation, this court has given the rule of decision to the district courts in U.S. v. Leotard. In U.S. v. Leotard, this court has said very clearly that you apply not the Blockburger test, which the government relies on, but you apply a totality of circumstances test, where you look at four factors. But Leotard was a situation where you're talking about the exact same statute, where you have two conspiracies to do pretty much the exact same thing under the statute, but you just have different circumstances. And you're trying to figure out whether the government is playing fast and loose. I know the language in Leotard is broad. But to my mind, it cannot be read as broadly as you would like, or there could never be a double jeopardy challenge. To me, Leotard almost assumes that you're not really talking about Blockburger. And to my mind, if you gave the Albernaz court this fact pattern, the Supreme Court would say, it's Blockburger. I just can't get beyond Leotard not applying. Can you tell me why that test, which is a totally fact-based circumstantial test as to who did what, as compared to what was the purpose of the conspiracies and what are the elements of the offense? I can't imagine that the Supreme Court would say, oh, of course, when you have these two different types of offense, you nonetheless apply Leotard. Okay, let me back up and talk about Albernaz for just a second. I mean, I'm really having a problem with this. That's why I'm laying it out in those terms. And I very much appreciate that, and I will try to address it directly. In Albernaz, you have a fairly typical drug conspiracy pattern, where you have a distribution conspiracy and you have an importation conspiracy. Courts have uniformly held, including this court. In fact, in the decision, I think that Judge Fuentes and Judge Rendell, you were both involved in U.S. versus Mark. I was about to say In re Mark. I sometimes get my professions confused. But U.S. versus Mark, where you have the same sort of situation as you do in Albernaz. Here, here, so that's one. An importation conspiracy just involves a different operation than the street-level distribution of drugs. In this case, you have a single claimed conspiracy. That's not the basis in Albernaz. They talked about different elements. They didn't talk about... They did, and they talked about different statutes and different... Well, but we have different elements here, right? You do not. To commit an offense against the United States bank fraud versus defraud the United States of tax dollars is not different? It's not, and here's why. And here's why. It's not an element. The element of... If you're talking about the elements of conspiracy, the elements of conspiracy are well laid out. One, you have to have an agreement between two or more persons. Two, you have to have an intent to violate the law. And under 371, you have to have an overt act. It doesn't matter what law or laws you intend to violate. That's Braverman. You can intend to violate all kinds of laws. Why would it make any sense for the Reguses in one conspiracy, alleged in New York, to intend to create false books and records, to intend to send false statements to the SEC, to intend to defraud a wide variety of people, including the federal government? Could you articulate why this is one conspiracy and not two? Yes, I just am. That may be the heart of the whole thing. It's a single conspiracy. It's a single conspiracy because the conspiracy had one overall objective. If you look at leotard and apply the leotard test, you've got one, same place, same people, overlapping time frames, just as in leotard, and the same objective. What is the objective of this conspiracy? It's to operate, according to the government, to operate Adelphia for the personal benefit of the Reguses. In New York, to do a whole variety of illegal things. And down here, to do one additional illegal thing. And you can't focus on just what the intent of the intended violation was. The courts uniformly say that, including this Court in leotard. Leotard did not apply that standard. It specifically rejected it, as a matter of fact. If you read the footnote in leotard, it says, we are not going to say we're going to look at what statutes were intended to be violated. You're going to tend to apply a bunch of different statutes. I only have a minute left in my principal argument. I'd like to say one quick thing about collateral estoppel. If you look at what happened in New York, and you compare that to the standard most recently articulated by the Supreme Court last month, in U.S. v. Yeager, you have to look at that record with realism, with practicality. You have to look at what was actually presented to the jury. What was actually presented to the jury was, the Reguses committed wire fraud by stealing billions of dollars from Adelphia, and by disguising it as loans. The Reguses said they were real loans. It wasn't a theft. The Reguses were acquitted of that. The government failed to meet its burden. The government does not get a second bite at that apple. But they were convicted of mail fraud and bank fraud. Only they were convicted of, I'm sorry, of securities fraud and bank fraud. There was no mail fraud charge. Yeah. The point is, in this case, the only tax fraud theory proffered by the government is exactly the same. It's the Reguses stole all this money. Now they should pay taxes on it.  The government doesn't get a second bite at that apple. Do you ever look at the object of the conspiracy, or do you always have to focus on the agreement that is made? In other words, if you have securities fraud, you're defrauding the public, and mail fraud is a different kind of fraud. They're simply different objects. In this case, in Philadelphia, the charge is tax evasion, which is totally different from the objects of the conspiracy in New York. Well, actually, Judge, that supports our argument. Because if you think about it, what you just said was, securities fraud is defrauding the public. Bank fraud is defrauding a bank. In New York, the Reguses were charged with one count of conspiracy for doing both. For doing both. So they were different objects. And you can, back to U.S. vs. Braves, you can have multiple objects for one conspiracy. Here, there's one conspiracy. The same overreacts, the same people doing the same thing at the same time,  and giving rise to a series of consequences. All of the consequences pleaded in New York, except for one, which is carved out, pleaded down here. That's the problem with the way the government has set forth the case. Mr. McMichael, on rebuttal, could you give me the names of the six cases you believe, in the duplicity context, have ruled the other way? If they're in your brief, or where they are in your brief. I will cite the brief. They are. Thank you. May it please the Court, George Rocktashel for the United States, and I'd like to introduce my co-counsel, Lorna Graham. What we would like to point out to the Court initially, is that the objects in the New York conspiracy count did not include defrauding the United States. I was going to say, I did not have that in my list of what the indictment contained. And I think the Court's list is correct, and we would refer the Court to the appellate appendix at 211 through 213 and 214, which describe the securities violations, the offenses against the United States under the Securities Act, that were alleged as the object of the conspiracy count in New York. How do we decide here? Do we have a single conspiracy? I mean, the case law talks about a single agreement that can have multiple objects. And if it violates one statute, you know, a single statute versus two statutes, it seems to me here we have a situation that is not contemplated in either Albernaz or Braverman. And if Congress adopted or enacted this statute after Braverman, you know, although I don't put a lot of stock in that, should we not say that because it's under the same statute it violates double jeopardy? We don't think so, Your Honor. We think you can have a single statute that puts forth two separate statutory violations. There are a number of statutes in the U.S. Code that do the same thing. I can't call any readily the mine, but the plain language of the statute talks about two separate ways of committing the offense that constitute separate statutory violations because one involves proof of a conspiracy to commit offense against the United States and the other a conspiracy to defraud the United States. And Klein and the progeny, including cases in this circuit that have talked about Klein conspiracies, talk about an intent to cheat the government, to deceive, to disrupt or frustrate the lawful governmental function of the IRS in collecting taxes. Then why isn't that one conspiracy, though? It's one conspiracy to defraud the government. Well, the conspiracy in New York... It's one agreement to raid Adelphia for your personal benefit, as Mr. McMichael stated. Well, the conspiracy in New York, Judge Fuentes, dealt with a different kind of victim, the shareholders, the investing public. Those are the people that the Reguses intended to deceive in that case. Do we look at the victim and do we look at the object of the conspiracy or do we look at the underlying conspiracy itself? What was the agreement that was reached? Well, our position would be, in the first instance, Blackberger controls. And we don't think Leotard says anything different about that. And we agree with Judge Randell that Leotard presumes same species, I'll say, conspiracies. And in this particular case, we believe the Court should look at the elements of the offense under Blackberger in the first instance. But if the Court believes that that's an insufficient way of determining whether or not we have different conspiracies or not, then you go on and you apply the Leotard factors and look at the totality of the circumstances. But in this case, on the elements level under Blackberger, just looking under the microscope without doing the genetic analysis or the DNA analysis in Leotard, there are two different kinds of objects and therefore two different kinds of agreements. The intent to defraud is different. All of the case law talks about one agreement with different objects is still one agreement. I'm trying to find out whether this is a... I mean, this doesn't smell like a single agreement to me. But on the other hand, maybe it's a single agreement with multiple objects, i.e. to commit an offense against the U.S. and to defraud. How do we determine whether it's a single agreement or not? Well, first of all, we would submit you would look at the elements and if the elements don't satisfy the court, then you would look at the totality of the circumstances. And really the hallmark under Leotard and the other cases in the circuit are whether or not they're different conspiratorial agreements. Couldn't this tax conspiracy have been brought in the Southern District of New York as another object of the overall conspiracy? Assuming there was venue, Your Honor, it could have been, but we think there could have been a risk if it was charged as a to defraud object, there's a risk of duplicity in that context. There are... I mean, we have cases where the failure to pay income tax on the ill-gotten gains have been raised in this circuit because I know I've been on the panel and where the defendants have said, oh, no, no, no, these are two different conspiracies and we have held, no, this is all part of the overall conspiracy. And I understand the case the Court is referring to, the Alston case and some other cases related to that. We would point out to the Court that in those cases there was kind of a conflation of objects in those conspiracies that gave the Court pause. We don't have that situation in this case. The illustration that we think is most apropos is had this Klein conspiracy been charged in the Southern District indictment, the question would be could Judge Sand in that district have imposed a consecutive sentence on the tax conspiracy consecutive on top of the conspiracy to commit the offenses against the United States. And we submit, for instance, if in that case Judge Sand had decided to sever those counts and try the securities conspiracy first and the Klein conspiracy second, the Court could in that case impose a consecutive sentence. That's really the issue that we don't think the appellants have addressed in this case as to whether or not you could impose consecutive sentences on the Reguses because they have committed a different conspiracy involving a separate conspiratorial agreement affecting the law, lawful function of the IRS in collecting taxes. I'm sure that's going to be your position if there is a sentencing. It may well be, Your Honor, if we ever get to that point. If you say, if he severed it, would he have to sever it in order to do that? I don't think he would, Your Honor, but I'm just throwing that out as a hypothetical scenario to get the case in the same posture that it is in this case. Well, that's an interesting way. I mean, everybody's citing duplicity cases to us and yet this may be another body of law that might be relevant to this. Well, Your Honor, we submit that the duplicity cases cited by the Reguses are not appropriate for the analysis in this case. While there's some relationship between duplicity and the Double Jeopardy Clause cases, duplicity really goes to notice to the defendant whether or not the defendant can answer the charge. For instance, in Judge Roth's scenario, if we put the defraud object, defraud of the United States, as an object of the offense, objects in the New York conspiracy, they would tend to be conflated and there would be some ambiguity in a jury verdict as to what agreement the jury thought that they reached because, as the Court knows, the jury has to be unanimous in a conspiracy case as to what the object of the conspiracy is. There has to be unanimity on that and duplicity really goes to questions of unanimity and also questions of variance and fatal variance if the government decides to change its theory of prosecution in mid-trial. We don't have that issue here because a jury will know from our indictment that the conspiracy alleged is one to defraud the IRS out of its lawful function in collecting and laying taxes. You know, Albernest is kind of confusing because it talks about reaching a determination on double jeopardy by basis of Blockburger. It kind of goes full circle. This is how you decide whether you have a problem. You look at Blockburger and yet it talks about the fact that Braverman is different because it violated one statute. So if you are technically looking at the direction that the Supreme Court is giving us, you say, okay, one statute, it's Braverman. What's your prediction about what the Supreme Court would do with this case and none of these cases have gone up, I assume. How would it reason that, well, Braverman, we said one statute but, you know, complete the sentence? Well, we think under Braverman, Your Honor, the court would view that as more of an offense conspiracy than a defraud conspiracy. Well, it was. All that was pleaded were all offenses. And the government charged there count one, conspiracy to evade, count two, conspiracy to file false. So it would distinguish Braverman and say, yes, we said one statute but it was really all the offense against the United States. There was one bolus of conduct but the government parsed it into different offense conspiracies and basically the Supreme Court said this was really one count of conspiracy with multiple objects being various violations of Title 26. We don't have that in this case. We have a unitary client conspiracy with no offense objects alleged. We didn't even allege an evasion object under 7201. They're stand-alone. What are the sentences? I'm just thinking about the sentences. For these two violations of the same statute it would be remarkably different. I mean, there'd be restitution under the to defraud section of this statute that would be very different from under the section that talks about committing an offense. Absolutely, Your Honor. It would be very different calculating a shareholder's loss or the corporation's loss is going to be different even from an accounting standpoint than it is to calculate and compute what the tax due and owing is. Maybe we need some help on the sentencing aspect to kind of work backwards from that because that seems to me to be something that's really not anticipated by the one statute. You assume it's a violation of one statute therefore your sentence flows from that and you can only be sentenced once for that violation. But if the sentences are so radically different for the different violations of this section this might help us. All right. I'm thinking on that. Okay. And one last thought, Your Honor. In Albernez there were two different Title 21 conspiracies but the Supreme Court found that they were separate violations of separate provisions with separate objects. Therefore the agreements were necessarily different under Title 21 and a conspiracy  versus a conspiracy to distribute. Well, I think it's easy to say they're separate agreements all the time because that's the way they're indicted. Everything's indicted to do this in a different way but somehow there's not a lot of good case laws to help you figure out exactly yeah. Well, is intent under separate agreements the same thing as object? Well, they're very close. You have to have an intent to defraud under the Klein conspiracy the IRS. Is that an object? Well, the object is to impair and impede the IRS's ability or to cheat the IRS through deceit or trickery out of the taxes due and owing and therefore thwart the IRS and its ability to do that. In contrast in the Southern District indictment the conspiracy was to commit wire fraud with respect to Adelphia and its shareholders and there was also some honest services fraud related to that and a breach of fiduciary causing a breach  of some of the officers. And the object to amass personal wealth and deprive others of money? I mean that ultimately was the allegation in New York that the Reguses did enrich themselves  the process of defrauding investors and the corporation and we would point this out to the court as well. The indictment in our case alleges a diversion of corporate assets. So if for instance the Reguses fairly disclosed the monies that they diverted out of the company and there therefore was no securities violation or they notified the board of directors that they were in fact going to move some money from one account a corporate account to one of their holding companies that they personally controlled and there was a fair disclosure under the Securities Act that doesn't end the analysis for purposes of the tax fraud in this case because you could move the money to your own account but if you don't report it on your income tax or undertake various steps to prevent the IRS from finding out about that you're still guilty of committing a tax evasion or a conspiracy to defraud the IRS. Let me ask you about this and speaking of the current indictment in Pennsylvania you charge or the indictment charges under overt acts that Timothy Regus had stated to an Adelphia employee that they would never pay this large amount of taxes again and the following sentence says Timothy Regus stated to Adelphia employees that the Regus family members should not take large salaries from Adelphia but should live out of the company or words to that effect. That's basically similar to what was contended in the New York indictment and this seems to support at least  position that this is one conspiracy which is to live off the funds of Adelphia and to never pay taxes again and that was really the conspiracy. Why is he wrong about that? I don't necessarily think that the New York case in which the Reguses were convicted entailed this other element that we have in our case to defraud the IRS. Yes, they may have wished to enrich themselves through various related party transactions involving stock and the transfer of corporate funds but that conspiracy focused exclusively on the effect on the shareholder the corporations and their duties as officers. Well that was the effect. Conspiracy to enrich themselves does that not include enriching themselves by not paying taxes on what they've stolen? Well, I guess if you want to look at the before tax enrichment or the after tax enrichment, Your Honor, certainly the before tax I think the answer is yes, they intended to enrich themselves but cheating the IRS takes the conspiracy to a new dimension that wasn't addressed. But wasn't that part of the original conspiracy is in fact never to pay taxes again and to live off the funds of Adelphia and that was the original conspiracy and that was the conspiracy that was proven in New York. Well, that would have been the motive we think certainly in the New York case but we don't think that that was the object of the conspiracy that was proved and the jury found the defendants guilty of in that case. I think we have to distinguish between the motive and the intent. The motive may be relevant to intent but it's not the same thing as the intent. The District Court's decision was not based on a hearing but rather on submitted papers? It was, Your Honor, and we think the District Court did not need to have a hearing. The defendant did not advance a sufficient amount of information to justify a hearing in the case and even today we don't hear anything about Judge Sand's jury charge or theory of defense instruction in the Southern District of New York which would have set the table for instance for their collateral estoppel argument that the case was couched in a certain way where the jury necessarily had to resolve the wire fraud issue or the loan versus compensation issue in deciding the wire fraud. I see my time has elapsed. Thank you. Thank you. First let me answer Judge Rendell's question about the cases. They are cited on, I'm starting on page 20 of our main brief through page 23. I can list them quickly. No, that's all right. They're there. They're all there. They're all laid out. I want to start by summarizing something that the Ninth Circuit said when dealing with 371. It said that we find it odd that Congress would intend to punish a conspiracy twice if the same conspiracy had the objective to violate a federal statute and to defraud the United States. That's an important observation because in most cases including this one the conspiracies include both. The conspiracy here is a tax fraud conspiracy. That violates a statute. It violates tax statutes and it also defrauds the United States. Can you be tried twice for that? If one were to accept the premise that Section 371 creates independent crimes then theoretically the government could try you for conspiracy to commit tax fraud on the theory that you were conspiring to violate the tax statutes and then try you a second time for conspiracy to commit tax fraud for the exact same act on the theory that you were conspiring to defraud the United States. But we punish them differently do we not? No. Why should they not be tried differently? No. And I wanted to address that because it came up in Mr. Rothschild's argument. The punishment for conspiracy is not separate. It's the punishment for the underlying crime that's separate. There is a single punishment for a single conspiracy. You go back to U.S. v. Braverman. It's one crime. Now the punishment for conspiracy to commit bank fraud has a separate punishment from conspiracy to defraud the United States. It imports the underlying punishment from the underlying statute. Right. And in this case you have one indictment in one count of conspiracy in New York you have bank fraud wire fraud and securities fraud. You have false books and records. You have false statements to the SEC. You don't have tax fraud. They left that out and they decided to do that separately. That's their right. But when the government makes that tactical decision it has to live with the consequences. That's why I started by saying these are problems of its own making here. But double jeopardy don't we look at the underlying offense and if it is treated differently for sentencing? No. Why can we not? No. Your Honor, there is no authority that I'm aware of that stands for that proposition. For double jeopardy purposes you look to the crime. You look to the crime. You go right back to the U.S. vs. Breitbart if you have a single crime you have a single agreement it's one crime it gets punished in the appropriate way. You can import the objectives the underlying statutes for punishment purposes but you still can't try twice. Why are they not two agreements here? One agreement to do what is prohibited by mail fraud and another agreement to defraud the United States. Why are they not two separate agreements? Because it involves different intents. It involves the same people doing the same thing at the same time with a variety of consequences and the case law is pretty uniform on that including Leotard. You don't look at the statutes the underlying statutes it's not one of the elements. You don't look at the specifically what Leotard said. He said you look at the totality of circumstances which include four factors but not the statutes being violated. But don't you all right. All right. That's interesting. Okay. Now it is true that when you have a conspiracy in New York an alleged conspiracy with multiple objectives that the jury have to determine what the objectives are. Mr. Rochtash will suggest there was some problem with that. There's no problem whatsoever. In fact if you look at the appendix page 321 I'm holding it in my hand this is the conspiracy security fraud wire fraud false books and records bank fraud list them all right there could easily have a sixth one saying tax fraud just didn't they just left it out and when it's one conspiracy you can't go back and do it. The fact that there are multiple objectives is not a problem it happens all the time and it doesn't violate duplicity as long as you're alleging a single agreement as was alleged in New York. So how do we how do we differentiate the intent that would support an agreement from the objectives if you will. Are you saying they're the same? One thing Judge Jones did below us he did point out that there is a lot of loose language in the opinions on double jeopardy and it makes it difficult for all of us to try to answer questions like that. I would look at it this way. I would say you have to look at what they did where they did it and when they did it and what their objective was. Their objective was allegedly to enrich themselves at the expense of public shareholders and public debt holders of Adelphia. Now they could implement that intent in a wide variety of ways as was alleged in New York. So the consequences the consequences of what they did of what they were alleged to have done are very broad and that's fine. You just can't try them twice for the same thing. But leotard is separating out different bank fraud leotard conspiracies if you will. Different conspiracies charging the same offense if you will. That's what Leotard involved an interstate theft of property and it did in both cases both alleged both indictments involved interstate theft of property. Right. Correct. And here we don't have the same. It's a much broader conspiracy alleged by the government. Just look at what they did. Five statutory violations on one of which the reasons were acquitted by the way which is important. Thank you. All right counsel. Could you arrange for a transcript of the argument to be made and split the cost? It's a very important case. We will be sure to do that. Thank you. And we may need some supplemental briefing on some of the things that were touched upon here. We'll let you know if we do. We would be very happy to do that as well. Thank you.